Brigitte SCHLANGE–SCHOENINGEN,
Plaintiff-Appellee,

v.

James A. PARRISH and W. Daniel
Whitehurst, Defendants-Appellants.

No. 84–8443.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1985.

J. Harvey Davis, Ocilla, Ga., for J. Parrish.

O. Wayne Ellerbee, Valdosta, Ga., for W.D. Whitehurst.

William U. Norwood, Thomasville, Ga., William A. Clineburg, Jr., David F. Duldenschuh, Atlanta, Ga., for plaintiff-appellee.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

On July 18, 1980 Brigitte Schlange-Schoeningen ("appellee"), a resident of the Federal Republic of Germany, filed her complaint in this diversity action to recover damages allegedly sustained as a consequence of fraud by the defendants James A. Parrish ("Parrish"), W. Daniel Whitehurst ("Whitehurst"), A.J. English and A.J. English Well Drilling & Pump Supply Co., Inc. (collectively "English"), in connection with plaintiff's purchase of an 862-acre farm in Colquitt County, Georgia. After a three-day trial, the jury returned a verdict in favor of the appellee and against all the defendants, jointly and severally, for compensatory damages. The jury also awarded punitive damages against Whitehurst and English. The court awarded attorneys' fees to the appellee and entered judgment against all defendants. Parrish and Whitehurst moved for judgment notwithstanding the verdict, and Parrish separately moved to alter and amend the judgment and for a new trial. These motions were denied by the trial court. Parrish and Whitehurst brought this appeal.

Three grounds of error are alleged. The appellants' primary contention is that the provisions of the contract entered into between appellants and the appellee bar an action for fraud. Alternatively, the appellants argue that the evidence was insufficient to make out a prima facie case of fraud, that the trial court committed error in allowing the deposition of a witness to be sent into the jury room over the objections of the appellants, and finally, that the trial court erroneously instructed the jury that a partnership existed between appellants Parrish and Whitehurst.

## I. FACTS

Almost one hundred years ago, Chief Justice Bleckley of the Georgia Supreme Court wisely observed, "[w]hen the right point of view is discovered, the problem is more than half solved." *Ellison v. Georgia Railroad Co.*, 87 Ga. 691, 706–707, 13 S.E. 809, 813 (1891). Aspiring to follow his example, we begin with the facts adduced at trial.

In May of 1978 Parrish acquired an option to purchase a farm from J.C. Boyce and Naomi Morris. The option was to remain open from May through December of

1978 and was obtained in exchange for a nonrefundable option payment of $12,000. Shortly after acquiring this option, Parrish became acquainted with Whitehurst and entered with him into several partnerships for the development and marketing of property, including the subject farmland. At trial, Parrish testified that during the period of time in question he and Whitehurst were "farming partners" with respect to certain land in South Georgia. Similarly, Whitehurst testified "[i]t was more or less understood that we were partners."

On August 25, 1978, Parrish putatively assigned his interest in the subject property to Whitehurst. Evidence in the case demonstrates, however, that Parrish assigned his purchase option to the father-in-law of Whitehurst, W.G. Castleberry, in consideration of $10,000. Parrish retained a $200,000 beneficial interest in the property in the event the option was exercised and the property sold.

In July, 1978, Whitehurst contacted English and asked him to drill a test well on the subject farm to determine the well depth required to supply 1,250 gallons of water per minute to a center pivot irrigation system. At Whitehurst's direction, English sent a crew to the farm to drill this test well. A test hole was drilled to a depth of 827 feet. Data obtained from this drilling indicated that it would be necessary to drill a well to a depth of 800 feet in order to generate the volume of water needed to drive the irrigation system. English prepared a log setting forth this information and sent that log to Whitehurst at his farm in Adel, Georgia on August 19, 1978.

English testified at trial that Whitehurst later called him, acknowledged receipt of the test log, and then asked him to prepare another log which would falsely show that water was available at 400 to 450 feet, instead of the accurate 800 feet. English was told that Whitehurst needed this false log in order to obtain financing from an insurance company with which to purchase the farm. English agreed and prepared this false well log, described repeatedly by him at trial as the "phony log." Two copies of this document were mailed to Whitehurst.

The "phony log," subsequently admitted into evidence as Plaintiff's Exhibit 6, indicated that a well drilled to a depth of 350 to 375 feet would yield 1200 gallons of water per minute. English later confirmed in a letter to plaintiff's agent after the farmland had been purchased by the plaintiff and again at trial that Exhibit 6 did not accurately depict the results of the test well drilled, and that in fact the water necessary to achieve the 1250 feet per minute flow was to be found considerably deeper. It is the procurement, creation and subsequent use of this "phony log" that is the fraud in this case.

### A. The Dodson Negotiation

At trial the court admitted deposition testimony of a Mr. H.C. Dodson, Jr. Mr. Dodson is a farmer residing in Tifton, Georgia who owned land in the proximity of the Boyce and Morris farm. At some time during the fall of 1978 Mr. Dodson, having heard that an option was held on the farm by Parrish and Whitehurst, made inquiry about purchasing the tract. Dodson was contacted about the farm, probably by Parrish, and he visited the land on several occasions, once in the company of Parrish and Whitehurst, once with Parrish alone, and several times unaccompanied. Mr. Dodson's deposition testimony established that he was told there was in existence a log documenting the availability of irrigation water on the farm. He asked to see the log and Parrish furnished it. The log which was provided Mr. Dodson was the "phony log," Plaintiff's Exhibit 6, prepared by Mr. English at the behest of Mr. Whitehurst to misrepresent the depth of water available on the land.

Mr. Dodson testified that on the basis of his considerable experience with water availability on other, similar tracts in the area of the Boyce and Morris farm, he disbelieved the water depth shown on the test log. Mr. Dodson subsequently made an offer for the property calculated rough-

ly at an offering price of $1,000 per acre. A sale was never consummated.

### B. *The Schlange-Schoeningen Negotiation*

At approximately the same time, the fall of 1978, Al Thompson, a realtor, contacted Mr. Parrish with respect to brokering the sale of the Boyce and Morris tract. It was Mr. Thompson's testimony that he worked jointly for Parrish and Whitehurst and that Mr. Whitehurst had informed Thompson that he, Whitehurst, was a part owner of the option and that he would cobroker any sale negotiated by Thompson in return for a portion of the commission.

Subsequently, Mr. Thompson became acquainted with Bernard DeWulf, the agent for the appellee. Thompson informed DeWulf that he was brokering a property which might be of potential interest to DeWulf's principal. DeWulf was invited to inspect the farm personally and, in December, 1978, Thompson, DeWulf, and Chris Anderson, the appellee's son, met with Parrish on the Boyce, Morris tract to inspect the land. DeWulf testified that at the time he inspected the property there was significant development already underway. In the course of the conversation at this meeting, Mr. DeWulf inquired about the availability of water for irrigation purposes on the land. DeWulf testified that Parrish told him there was abundant water. DeWulf asked about the depth of that water and was told that it underlay the land at approximately 300 to 400 feet. DeWulf then inquired about the basis for this information and was told that a test well had been drilled and that a report on this test well verified the availability of abundant water at 300 to 400 feet. DeWulf asked to see this test well report. At this time the "phony log," Plaintiff's Exhibit 6, was in the possession of Mr. Dodson. Mr. Thompson, the realtor, picked up the report from Mr. Dodson's office at the direction of Mr. Parrish. Mr. Thompson then provided the test well report to Mr. DeWulf and to Chris Anderson, the appellee's son.

DeWulf testified that, on the basis of the test well report which he had been furnished, he advised the appellee and other members of her family, all persons interested in the purchase of the property, that there was sufficient water underlying the farm at a depth of 300 to 400 feet to sustain irrigations systems at a feasible cost.

By November, 1978, it had become apparent that the option held by Parrish and Whitehurst on the Boyce, Morris tract would not be exercised prior to its expiration at the end of the year. Parrish negotiated an extension of the option on the farm through September, 1979.

In February, 1979, the appellee and her husband, Hans-Joachim Schlange-Schoeningen, visited the Boyce, Morris tract with DeWulf and Anderson. Testimony in the case established that the appellee and her husband relied specifically on the "phony log" and other representations transmitted from the defendants through appellee's agent DeWulf, concerning the availability of water and the costs of irrigating the tract.

On February 2, 1979, Parrish and Whitehurst memorialized their partnership agreement to market and sell the Boyce, Morris tract. On April 5, 1979, Parrish assigned his interest in the extended option to Whitehurst. Whitehurst then assigned the option to DeWulf's organization, Branch & Associates Farm Management, Inc. on May 29, 1979. The farm was conveyed to the appellee by deed dated June 19, 1979.

Shortly after the purchase was completed, the appellee's son, Chris Anderson, learned from his irrigation consultant that it was unlikely water was available at a depth of 400 feet. Anderson then contacted English and was told by him that the test well report was indeed inaccurate. English then explained his dealings with Whitehurst which led to the preparation of that report. This lawsuit followed.

The jury found all defendants jointly and severally liable for fraud, assessing $155,000 in compensatory damages. The jury also assessed $75,000 in punitive damages against defendant Whitehurst, and $10,000

in punitive damages against defendant English. Defendants Whitehurst and Parrish have appealed.

We believe "the right point of view" of these facts reveals much more than ordinary contract negotiations culminating in a sale of real property. The circumstances admit a devious arrangement whereby sellers of land caused the creation of an apparently neutral record of expert opinion baldly misrepresenting a fact material to the purchase. The seller saw to it that prospective buyers obtained this misrepresentation. They then stood by, inviting reliance upon a tacit lie, without making, or needing to make the subject of that lie an issue in negotiation or an otherwise apparent part of the bargain. In Mr. Dodson's case, the scheme failed because of his familiarity with the characteristics of similar tracts. In the appellee's case, this clever scheme was near successful. In our view, "the problem is more than half solved."

## II. THE EFFECT OF THE MERGER CLAUSE

The appellee has affirmed the contract of sale by which she purchased the Boyce, Morris tract. It is the appellants' primary contention that by doing so the appellee must be bound by the terms of the contract, among them a "merger clause" integrating the bargain of the parties in the contractual writing. As such, the appellants contend, the appellee may not sue on the basis of a misrepresentation not contained in the contract.

Paragraph 14 of the Land Sales Contract provided

(c) This contract contains the entire agreement of the parties hereto, and no representations, inducements, promises, or agreements, oral or otherwise between the parties not embodied herein shall be of any force of effect.

The appellants take the position that, because any representations about ground water availability are not contained within

the integrated writing of the contract, the appellee may not maintain the instant action. In our view this argument misconceives Georgia law governing the kind of fraud at issue here.

■ In the context of promissory fraud, Georgia law puts a plaintiff to an election of remedies. The plaintiff may rescind the contract and sue in tort for deceit or affirm the contract and sue on the contract for breach. *See e.g., Nixon v. Sandy Springs Fitness Center, Inc.,* 167 Ga.App. 272, 306 S.E.2d 362 (1983); *Condios, Inc. v. Driver,* 145 Ga.App. 537, 537–38, 244 S.E.2d 85 (1978); *Collier v. Sinkoe,* 135 Ga.App. 732, 733, 218 S.E.2d 910 (1975). Because a "merger clause" is in reality merely a contractual reaffirmance of the parole evidence rule, *see Williston On Contracts* § 811 (W. Jaeger Ed. 1961), this requirement of an election of remedies is a necessary consequence of the longstanding and strong policy in support of that rule. *See, e.g., Thomson v. McLaughlin,* 13 Ga.App. 334, 79 S.E. 182 (1913); Sweet, *Promissory Fraud and the Parole Evidence Rule,* 49 Cal.L.Rev. 877, 897 (1961). The virtue of this approach (if virtue it is)[1] is to "[avoid] the seemingly unfair result of allowing the innocent party to circumvent the Parole Evidence Rule by proving the nonexistence of a contract, and then permitting him to use the contract in some manner." Sweet, 49 Cal.L.Rev. at 897. In the context of promissory fraud, that is, the circumstance presented wherein a promisor represents a fact or makes a promise to a promisee as an inducement for contracting, the Parole Evidence Rule's consequence of an election of remedies makes sense. It is fair, it seems to us, to require a party to set out those representations upon which he intends to rely and to limit judicial enforcement of promises to those so set out. Put another way, the concern of the Parole Evidence Rule is simply that both parties to a contract have notice of the extent to which their bargains will be enforced.

---

**1.** We note in passing that the Georgia rule is frequently criticized. *See* Sweet, 49 Cal.L.Rev. at 897–900. However, our task is merely to adjudicate the present controversy under Georgia law.

The cases cited by the appellants deal with promissory fraud and establish that election of remedies in this context is required. In these cases a buyer, intending reliance upon a seller's representation, must, at his peril, require that that representation be incorporated in the written contract of the parties. When the buyer's vigilance fails, the law will allow recision for fraud, but it will not permit reliance upon a promise the enforcement of which the buyer by his own diligence, could have insured. *See e.g., City Dodge, Inc. v. Gardner*, 232 Ga. 766, 208 S.E.2d 794 (Ga. 1974). The same rule clearly applies to contracts for the sale of real property. *Condios*, 244 S.E.2d at 86.

However, even in the real property sales context, Georgia courts have been careful to point out that the election doctrine rests on the premise "the law ... demands of everyone that he make use of his own facilities to avoid being defrauded." *Worth v. Orkin Exterminating Co.*, 142 Ga.App. 59, 61, 234 S.E.2d 802, 804 (Ga.Ct. App.1977), *quoted in Condios*, 244 S.E.2d at 87. This presupposes an ability to use those facilities and that a duty to use them would not be unreasonable under the circumstances of the case. Moreover, election would apparently not be required if it could be shown that one of the parties interfered with the *ability* of the other to ascertain the real nature of the bargain into which he was entering. *See Condios*, 244 S.E.2d at 87.

The case before us does not involve the kind of fraud contemplated by the Georgia election of remedies doctrine. By causing Mr. English to prepare a false test log of exploratory water drilling on the Boyce, Morris property, the appellants acted far more insidiously than does a promisor who makes a promise without a present intention of fulfilling it. Procuring the false report injected a taint into the bargaining process; it was a taint of which the appellee could not apprise herself. As we view it, therefore, this case differs from the usual promissory fraud [2] because there was nothing that a reasonable purchaser would have insisted be put into the contract which would have protected him or her against the defendant's duplicity. For this same reason the election of remedies required under Georgia law is inapplicable.[3]

At trial, Judge Owens effectively reached the same conclusion when he determined that the Georgia election of remedies requirement does not apply under present circumstances because there was no representation by a party to the contract. While it may certainly be argued that procuring a false well log is a constructive representation, our decision turns rather on the nature of the fraud perpetrated. By analogy, the circumstance is very much like the difference between fraud in the inducement to a bargain and fraud in

---

**2.** It is the difference between promising a purchaser that there is gold in the mine and "salting the mine" to create the appearance that gold is there.

**3.** Interestingly, Dean Prosser seems also to recognize this peculiar possibility and to identify it as an issue existing on the fringes of contract and tort law, the so-called "contort" of recent renown.

> *Recovery of intangible economic losses is normally determined by contract law.* Generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from the tangible physical harm to persons and tangible things. This being so, the manifested intent of the parties should ordinarily control the nature and extent of the obligations of the parties to a contract of sale, either of real or

personal property or a contract of service. This is not to say that this should always be so. The position of the consumer in the marketplace may be such as to justify certain obligations on those who. supply goods and render service apart from promises made and intentions manifested. No doubt there are some consumer transactions where courts or legislatures do conclude that certain obligations cannot be disclaimed and when freedom of contract is restricted and regulated. But if this be so and if freedom to negotiate is restricted in such a way that without a defect in the negotiation process there is liability notwithstanding a disclaimer, the liability would appear to be tortious in nature and ought to be regarded as such.

W. Keeton, *Prosser & Keeton on Torts* § 92 at 657 (5th Ed.1984).

the execution of that bargain. The parole evidence rule and the concomitant merger clause doctrine have never applied to the latter circumstance. *See e.g., Goldsmith v. Vrooman,* 68 Ga.App. 528, 528, 23 S.E.2d 504, 505 (1942). We therefore affirm the district judge's ruling that the appellee may pursue her action irrespective of the merger clause provision of the land sales contract.

## III. OTHER ISSUES

■ The appellants also argue there was insufficient evidence of reliance upon the false well log to authorize submission of the issue for the jury's determination. Having examined the trial transcript in its entirety, we conclude that this ground is without merit. Evidence of reliance, although contradicted by the appellants, was certainly present. The jury necessarily found reliance and we will not disturb that finding.

■ Appellants also argue that the trial court erred in allowing the written deposition of H.C. Dodson to be sent to the jury room upon the written request of the foreman of the jury and over the objections of the appellants.

Curiously, while there exists a plethora of cases considering this issue in state courts, *see* Annot., 57 ALR 2d 1011 (1958), no reported cases appear to consider this question under the Federal Rules of Evidence. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2142 (1970).

Rule 32(a)(1) Fed.R.Civ.Proc. provides that a deposition may be used for any purpose otherwise permitted by the Rules. In determining the propriety of allowing jury room consideration of deposition testimony, we weigh the traditional concern that the jury have access to admissible evidence against the possibility that juries might give undue weight to written testimony at the expense of oral testimony taken at trial. *Federal Practice and Procedure supra,* § 2142 at 451–52. As with jury room consideration of other documentary evidence, we believe that the trial judge is in the best position to strike this

balance and that the question should be within his or her sound discretion, to be overturned only for abuse. *Cf. United States v. Stone,* 472 F.2d 909, 914 (5th Cir.1973) (written confession sent to jury room); *Murray v. United States,* 130 F.2d 442, 444–45 (D.C.Cir.1942) (written transcript of proceedings sent to jury room).

At trial the jury was permitted to hear portions of the deposition testimony of Mr. Dodson. After retiring, they requested those portions be sent in to them. The trial court, after removing any deposition testimony not read into evidence, granted that request. We have read all testimony contained in the disputed deposition excerpt and conclude no harm was thereby done the appellants. Likewise, appellants have been unable to point to specific prejudice. We find no abuse of discretion in the trial judge's decision. In the absence of abuse, his decision should stand. We hold that it does.

Finally, the appellants argue that the trial judge improperly instructed the jury that a partnership existed between appellants with respect to third parties. They contend that the issue of partnership was a question of fact or, at least, a mixed question of law and fact, for the jury. We conclude that this argument, too, is without merit.

■ Under Georgia law the facts of a particular case may be so conclusive that the court's finding of the existence of a partnership is demanded as a matter of law. *See Corbin v. Collum,* 173 Ga. 681, 160 S.E. 771 (1931); *Brandon & Dreyer v. Conner,* 117 Ga. 759, 45 S.E. 371 (1903); *Barrow v. Georgia Chemical Works,* 34 Ga.App. 31, 128 S.E. 14 (1925). The official Code of Georgia Ann. § 14–8–20 provides:

a partnership may be created either by written or parole contract, or it may arise from a joint ownership, use and enjoyment of the profits of undivided property, real or personal.

■ There was ample evidence at trial to establish that Parrish and Whitehurst coordinated their efforts in the development

and marketing of the Boyce, Morris tract. Moreover, the appellants do not dispute that they memorialized their partnership agreement on February 2, 1979, describing their relationship with respect to the Boyce, Morris tract as a "joint venture." We believe this evidence overwhelmingly establishes the existence of a partnership as a matter of law. Accordingly, the trial judge's instruction was proper.

### IV. CROSS APPEAL

Finally, we note the existence of a cross-claim between the appellants Parrish and Whitehurst as to liability. This issue is apparently not before us. The jury's finding of liability was joint and several as between the three original defendants in this case. Accordingly, we hold that the existence of the appellant Parrish's cross-claim against the appellant Whitehurst should not impede the execution and collection of judgment entered against all defendants in this case.

### V. CONCLUSION

For the reasons foregoing, the judgment of the district court is

AFFIRMED.