Allen DeMOSS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 53S00–8703–CR–00356.

Supreme Court of Indiana.

Aug. 15, 1988.

David B. Hunter, Deputy Public Defender, Monroe County, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in Monroe Superior Court II, Defendant–Appellant Allen De-Moss was found guilty of Murder and Robbery on September 25, 1986. The trial court subsequently sentenced him to a forty (40) year term of imprisonment.

The only allegation of error DeMoss raises in this direct appeal is his claim it was harmful error for the trial court to allow the transcripts of certain taped statements into evidence and to allow these transcripts to be submitted to the jury during deliberations.

The facts show that on March 21, 1986, Frank DeMoss found his son Ronnie De-Moss on the floor of his trailer. Ronnie DeMoss died from multiple stab wounds. A TV, VCR, and a stereo were missing from the trailer. Allen DeMoss testified he and Harold Livingston went to Ronnie's trailer on the night of March 20, 1986. He took the TV, VCR, and stereo while Livingston held Ronnie DeMoss. Allen Demoss testified he had been sexually molested by his uncle, Ronnie DeMoss, when he was younger and he had learned Ronnie had been arrested for sexually molesting his (Allen's) twelve-year old brother. Allen said he wanted to take these items because he thought the VCR, TV and stereo might be used by Ronnie DeMoss to show video recordings of his sexual molestation of Allen DeMoss' brother, and he wanted to make a statement to his uncle to discontinue sexually molesting children.

Allen DeMoss stated he never intended or wanted to kill Ronnie DeMoss. He said while he was taking the items out of the house, he saw the victim on the floor with Harold Livingston on top of him, making stabbing motions. When they got into the car, Harold Livingston came out and told Allen DeMoss the victim wouldn't be molesting any more kids because he was dead.

Allen DeMoss subsequently was questioned by the police and gave them statements before and after his arrest. All of his statements were tape recorded. Among these statements were the ones in question, made on April 14, 1986, and April 20, 1986. Transcripts were made and at trial, both tapes of DeMoss' statements and the transcripts made of them, were admitted into evidence. The exhibits were played for the jury. Also, the jury was given the transcriptions to use to follow the tape recording.

When the exhibits were offered at trial, DeMoss objected to the April 14, 1986 transcript; he claimed it was not necessary and there was no foundation laid regarding its accuracy. As to the transcript of the April 20 statement, DeMoss had no objection to its admission, "except on the basis previously stated in our motion." DeMoss had previously objected to admitting the statement, claiming it should be suppressed because it was not voluntarily made. He did not pursue this issue further and does not now raise that ground in this appeal.

The accuracy of the transcripts was established by Margaret Cook, who testified she was the person who prepared the transcript from the taped statements. She also testified the transcript truly and accurately reflected what was on the tape with the exception of minor typographical mistakes. The trial court admitted the tapes and transcripts into evidence and instructed the jury they were to use the transcripts as an aid while listening to the tapes, but if they found any conflict between what the tapes said and what was stated in the transcript, they were to ignore the transcript and rely on what they heard on the tape as far as the actual content of the conversation was concerned. This procedure was approved by this court in *Bryan v. State* (1983), Ind., 450 N.E.2d 53.

DeMoss points out that in the subsequent trial, it was discovered there was a mistake in the transcription of the April 14 statement. Detective Allcron testified in the Livingston trial that the transcript indicated Livingston said, "But I meant, you know, break his arm, I didn't want to kill him," and that the tape states at that point, "But I meant you know rip him off, I didn't want to kill him." The officer also testified

this mistake was very apparent by listening to the tape while following along with the transcript.

In the first place, the record of Detective Allcron's testimony in another trial is outside the record of this cause and cannot form the basis for finding trial court error here. On its face it cannot demonstrate reversible error even if we find a misstatement exists. The jury was fully and properly instructed that it was to follow the language on the tape and to use the transcript only as a guide, and to ignore the transcript if it conflicted with the spoken language on the tape. DeMoss only generally objected to the admission of the transcripts, stating it was not necessary to have them because the tapes were very clear, and he made no specific objection pointing out discrepancies or reasons to find the transcripts unreliable. The trial court used the proper procedure and one commonly used at trial in presenting these exhibits to the jury. We find no reversible error here.

DeMoss also argues the trial court erred in allowing the transcript of the April 14, 1986 taped statement to be submitted to the jury during its deliberations. He cites no authority or argument to support his bare statement the court erred in doing so. The record shows there was a lengthy discussion between the trial judge and counsel for both sides about the submission of certain exhibits to the jury during deliberations. The trial court advised counsel he was sending certain exhibits to the jury room on authority of opinions from this court, including *Thomas v. State* (1972), 259 Ind 537, 289 N.E.2d 508; *Smith v. State* (1982), Ind., 437 N.E.2d 975. He stated to defense counsel he would not send the transcripts in question to the jury room because he felt DeMoss might object to it and suggested if defense did not want them sent to the jury room he would not. Defense counsel responded initially he had no objection to any particular exhibits going to the jury and agreed to all of them going, including the transcripts in question, but then suggested he would object only on the basis the jury would not be able to utilize the tapes because of the need for the technology required to play them. The court informed counsel the jury would be furnished with all necessary equipment to play the tapes so they could make use of the exhibits. There was more lengthy discussion between the court and counsel, in which there was general agreement as to how the exhibits would be presented to the jurors. DeMoss does not question any of this or suggest the trial court acted improperly in submitting the exhibits to the jury or the manner in which he did it. Again his position seems to be that the one discrepancy discovered later was so prejudicial as to merit reversal of his conviction. For reasons already stated, we are unable to make such finding.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.