Doris J. LITHERLAND, Appellant–Defendant,

v.

Amy McDONNELL, Appellee–Plaintiff.

No. 64A03–0303–CV–84.

Court of Appeals of Indiana.

Oct. 10, 2003.

Michael P. Blaize, State Farm Litigation Counsel, Merrillville, IN, Attorney for Appellant.

Bryan M. Truitt, Law Offices of Tsoutsouris & Bertig, Valparaiso, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Doris Litherland appeals the jury verdict in favor of appellee-plaintiff Amy McDonnell with regard to McDonnell's negligence action that was brought against her. Specifically, Litherland contends that the verdict must be set aide because the trial court erred (1) in denying her motion to exclude certain evidence, or, in the alternative, for a continuance of the trial; and (2) in allowing the deposition transcript of McDonnell's expert witness to be sent to the jury room during deliberations. Finding that the trial court was within its discretion in both instances, and further concluding that Litherland waived the issue with respect to her continuance motion and the request to exclude evidence, we affirm.

### FACTS

On December 11, 1999, McDonnell and her now husband Kevin McCoy were traveling westbound in the left lane on U.S. Highway 30 in Merrillville. Just ahead of McDonnell and McCoy, Litherland and her husband were attempting to return a rental car at Enterprise Rental. Enterprise is located in a strip mall on the north side of U.S. 30. Litherland was attempting to exit by crossing the westbound lanes. No break in the median existed where Litherland was exiting. As McDonnell approached the access road, Litherland pulled out onto U.S. 30, crossed both westbound lanes and stopped in McDonnell's lane. McDonnell applied the brakes and attempted to swerve, but the front driver

side of McDonnell's vehicle collided with the tail section of Litherland's vehicle.

As a result of the accident, McDonnell suffered a broken sternum, a contusion to the head, and upper neck and shoulder pain. The fractured sternum and upper back pain gradually subsided and healed, but the lower back pain persisted. For the lower back injury, McDonnell's family physician, Dr. Thomas Yerks, prescribed pain and anti-inflammatory medication. When that failed to reduce the pain, physical therapy was attempted. Dr. Yerks also referred McDonnell to Dr. Herbert Biel, an orthopedic surgeon, who ordered two MRIs. Even with medications, McDonnell had daily pain when she exerted herself or when she sat for long periods of time.

On December 7, 2001, McDonnell filed a complaint against Litherland alleging that she was negligent and had caused the collision. By mutual agreement, the parties set the discovery deadline for February 10, 2003, the date the trial was to commence. On February 3, 2003, Litherland filed an unverified motion to exclude evidence or, in the alternative, for a continuance of the trial. Specifically, Litherland alleged that she was not aware of the November 20, 2001 MRI report that supported Dr. Biel's diagnosis of facet joint syndrome until January 31, 2003, and thus she was deprived of any opportunity to prepare a defense. Litherland's motion did not include affidavits, attachments or other evidence to support her motion. The trial court denied Litherland's motion the same day it was made.

Four days later, Litherland filed a motion in limine asking the court to exclude "[a]ny and all evidence of the November 20, 2001, MRI" for the same reasons that she had previously asserted. Appellee's App. p. 2. The court denied the motion in limine "for the reasons stated in Plaintiff's response." Appellee's App. p. 21. Those reasons included: McDonnell signed an authorization to release medical information and provided Litherland with the identities and addresses of all her lifetime care providers; McDonnell had continually alleged permanent lower back injury; Litherland did not provide McDonnell copies of her Trial Rule 34 requests for production of documents and things; McDonnell disclosed in her deposition that she had two MRIs; and the results of the MRI were contained in the records Litherland had supplied to McDonnell on January 24, 2003. Appellee's App. p. 9–11. On February 7, 2003, Litherland and McDonnell entered into a pre-trial order that stipulated to all medical records and bills except that Litherland reserved objection to the November 20, 2001 MRI report. The parties also stipulated to the unavailability of Dr. Yerks and to the admissibility of all other medical records.

At trial, Litherland introduced, as her own exhibit, all medical records and bills of McDonnell, including the November 2001 MRI report. Dr. Yerks's deposition was read into evidence with no objection by Litherland. Dr. Yerks testified in his deposition that McDonnell's lower back pain was the result of soft tissue damage [1], which is not evident on an MRI. Dr. Yerks explained that he referred McDonnell to Dr. Biel, who ordered the November 2001 MRI. That MRI showed a facet proliferation in McDonnell's spine. Such a malady refers to the body's reaction to long-term inflammation, i.e., a soft tissue injury. The facets are spinal joints between the

---

1. Dr. Yerks defined soft tissue damage as an injury involving non-bony structures such as tendons, muscles and ligaments. Tr. p. 86.

vertebrae that have narrow openings for the nerves coming out of the spinal cord. When the body suffers long-term inflammation, its natural response is to grow additional tissue over a period of time. Given the nature and location of McDonnell's injuries coupled with the location and timing of the onset of McDonnell's facet proliferation, Dr. Yerks testified that he believed beyond a medical certainty that the proliferation was related to the accident with Litherland.

Two hours into deliberations, the jury sent the following written questions to the court. "(1) Did Dr. Yerks say specifically that the back injury was a result of the car wreck? (2) From the transcript, can we see the doctor's testimony of the cause of her lower back injury? (3) Are we able to review the testimony of Dr. Yerks concerning his probable cause of the lower back injury? (4) Is the doctor's 'opinion' evidence or fact?" Tr. p. 291. After hearing arguments from counsel, the court found the jury to be at an impasse, and, over Litherland's objection, the court sent the transcript of Dr. Yerks's deposition testimony to the jury room. The jury subsequently returned a verdict in favor of McDonnell in the amount of $128,888, and Litherland now appeals.

## DISCUSSION AND DECISION

### I. Litherland's Motion to Continue or to Exclude Evidence

■ Litherland first argues that the trial court erred in denying her motion to continue the trial or, in the alternative, to exclude evidence of McDonnell's November 2001 MRI report. Specifically, she contends that the trial court should have granted her motion because she was unaware of McDonnell's November 2001 MRI until January 31, 2003, a week before trial. Thus, Litherland maintains that she was prejudiced by the MRI report's admission.

■ In resolving this issue, we initially note that granting or denying a party's motion for continuance is left to the sound discretion of the trial court. We will only overturn the trial court's decision for an abuse of discretion. *Scott v. Crussen*, 741 N.E.2d 743, 746 (Ind.Ct.App.2000). An abuse of discretion occurs where the trial court reaches a conclusion that is clearly against the logic and effect of the facts of the case. *Nat'l Eng'g v. C & P Eng'g*, 676 N.E.2d 372, 375 (Ind.Ct.App.1997). In the context of a motion for continuance, "[t]he moving party must be free from fault and show that his rights are likely to be prejudiced by the denial." *Scott* 741 N.E.2d at 746 (quoting *Danner v. Danner*, 573 N.E.2d 934, 937 (Ind.Ct.App.1991)). Likewise, the admission and exclusion of evidence falls within the sound discretion of the trial court, and is reviewed only for abuse of discretion. *Morequity, Inc. v. Keybank, N.A.*, 773 N.E.2d 308, 312 (Ind. Ct.App.2002).

In this case, the record reveals that it was Litherland who ultimately introduced evidence of McDonnell's medical records during her case-in-chief. These records included the disputed MRI report. Tr. p. 245. As a result, Litherland cannot be heard to complain, and any claim of error is waived with respect to admission into evidence of the MRI report. *Thompson v. State*, 728 N.E.2d 155, 161 n. 3 (Ind.2000) (holding that where defendant not only failed to object to the evidence, but moved in its admission at trial, any claim of error was waived)

### II. Deposition Transcript

Litherland next argues that the trial court erred in allowing the jury during deliberation to review the deposition transcript of Dr. Yerks. Specifically, Litherland contends that the trial court abused

its discretion because deposition transcripts are not permitted in the jury room.

In support of her contention, Litherland directs us to *Thomas v. State,* 259 Ind. 537, 289 N.E.2d 508 (1972). In that case, our supreme court adopted Section 5.1 of the American Bar Association Standards Relating to Trial by Jury, which states, "The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against Defendant and exhibits and writings which have been received in evidence, *except depositions.*" (Emphasis added). The trial court in *Thomas* had allowed the jury to review in the jury room prior statements of witnesses that were used during the trial. Our supreme court held this to be an abuse of discretion because the statements were of little aid to the jury, because the jury might have considered the statements for the truth of the contents, and because the statements might have unduly influenced the jury. *Thomas,* 259 Ind. at 540, 289 N.E.2d at 509.

Historically, we have taken the position that once jury deliberations begin, the trial court should not provide the jury with a transcript of deposition testimony. *See Thomas,* 289 N.E.2d at 510, 259 Ind. at 541. However, as of January 1, 2003, we have "changed our rules in this regard, allowing trial courts to 'facilitate and assist jurors in the deliberative process ... in order to avoid mistrials.'" *Thomas v. State,* 774 N.E.2d 33, 36 (Ind.2002) (quoting *Tincher v. Davidson,* 762 N.E.2d 1221, 1224 (Ind.2002)).

Jury Rule 28, which the trial court invoked in its decision to send the deposition transcript to the jury room, states as follows:

If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

Inasmuch as this rule has been enacted so recently, we have found no case law in Indiana construing the same. Thus, we turn to other jurisdictions that have considered the issue for guidance as to the propriety of sending depositions and other evidence into the jury room.

Arizona Rule of Criminal Procedure 22.4 and Arizona Rule of Civil Procedure 39(h) are identical rules that provide that in the case of an impasse, the court shall ask how the court or counsel can assist the jury in making a decision. In interpreting the rule, the Arizona Court of Appeals has allowed evidence to be reopened even where an impasse has not occurred. "Although the jury was not at an impasse, *e.g.* Rule 22.4, the same considerations of appropriately assisting a jury—without prejudicing the rights of the parties—are applicable here: the trial judge should 'fully and fairly respond,' when possible." *State v. Patterson,* 203 Ariz. 513, 56 P.3d 1097, 1099 (Ariz.Ct.App.2002) (citation omitted). Further, the Arizona Supreme Court has noted that it may be allowable for the jury to rehear or read some of the testimony in a deadlock situation under the rule. *Perez v. Comty. Hosp. of Chandler, Inc.,* 187 Ariz. 355, 929 P.2d 1303, 1307 (Ariz.1997).

The Eleventh Circuit found in *Schlange–Schoeningen v. Parrish,* 767 F.2d 788 (11th Cir.1985), that it was not an abuse of discretion for the trial court judge to send to the jury room only the portions of a deposition that had been read into evidence. The Court found that Parrish was not harmed by the trial court's action. *Schlange–Schoeningen* 767 F.2d at 794.

Additionally, the Sixth Circuit held in *U.S. v. Betancourt*, 838 F.2d 168 (6th Cir.1988), that the trial court was within its discretion in providing the deliberating jury with the transcript of a witness's testimony where the witness had heavily accented English, and was thus difficult to understand.

■ Jurisdictions that have addressed this issue have favored more, as opposed to less, assistance to the jury. Following this trend, we now hold that Jury Rule 28 allows deposition transcripts that have been admitted into evidence into the jury room if the jurors have indicated that they are at an impasse, and, after consulting with counsel, the trial court finds that neither party will be unduly prejudiced.

■ This holding is in keeping with the trend in this state of facilitating and assisting jurors in the deliberative process as well. Juries may take into the jury room: a defendant's video and audio taped confession that has been received into evidence, *Harris v. State*, 659 N.E.2d 522 (Ind.1995), transcripts and an audio tape that were in conflict, *DeMoss v. State*, 526 N.E.2d 1169 (Ind.1988), photographs admitted into evidence, *Robinson v. State*, 699 N.E.2d 1146 (Ind.1998), and exhibits and other documentary evidence, *Duke's GMC v. Erskine*, 447 N.E.2d 1118 (Ind.Ct. App.1983). The trial court may also reread testimony to the jury. *Kiner v. State*, 643 N.E.2d 950 (Ind.Ct.App.1994).

When our supreme court created Jury Rule 28, it could very well have adopted the language of Section 5.1 of the American Bar Association Standards Relating to Trial by Jury as approved by the *Thomas* court, which specifically excludes depositions from the jury room. Instead, it chose more expansive language, giving the courts more latitude in facilitating and assisting jurors in the deliberative process,

and we interpret Jury Rule 28 in light of this policy.

Here, the deposition transcript at issue had been read into evidence without objection. Tr. p. 72–142. Upon receiving the jurors' request to review Dr. Yerks's deposition, the trial court consulted with counsel for both parties. Tr. p. 291–297. The trial court found that the jurors were at an impasse over Litherland's objection and sent the deposition to the jury. Tr. p. 297.

■ That said, Litherland challenges the finding that the jurors were at an impasse, largely because the "word impasse, deadlock or stalemate" was absent from the note. Appellant's Reply Br. p. 12. An impasse is defined as "a position from which there is no escape, a deadlock." *The New Shorter Oxford English Dictionary* 1318 (Thumb Index ed.1993). A deadlock is "a condition or situation in which no progress or activity is possible; a complete standstill; lack of progress due to irreconcilable disagreement or equal opposing forces." *Id.* at 600. The first three of the four questions the jury sent to the judge demonstrated that the jury was having significant difficulty with the issue of causation, a required element of negligence. Appellant's App. p. 35. In light of such difficulty, we agree with the trial court's statements that the new jury rules have created "more of a user-friendly jury system", and thus "when they admit to having questions—now, the rules state that we're to help them now." Tr. p. 293. Moreover, based on the questions from the jury, the trial court was within its discretion to determine that the jury was at an impasse, or a complete standstill. Thus, Litherland's argument must fail on this issue.

■ Finally, Litherland argues that she was prejudiced when the trial court sent the deposition transcript to the jury. Specifically, Litherland contends that the

jury was unduly influenced by the written testimony of Dr. Yerks. Chief Justice Arterburn's dissent in *Thomas* most appropriately answers Litherland's claim:

> I do not think we should be too restrictive or concerned with what the jury receives in the jury room for consideration, during its deliberations, so long as it is competent evidence. The fear that one part of evidence will be overly emphasized is more than counterbalanced by the fact that the memory of the jurymen may not be sufficient to retain details as to exhibits or testimony. Why should a juryman be required to rely upon memory, which can be erroneous and which can be corrected by the actual facts. We are seeking the truth after all.

*Thomas*, 259 Ind. at 541, 289 N.E.2d at 510 (Arterburn, C.J., dissenting). Dr. Yerks's deposition shows that he was not contradicted by any other witness. Additionally, the transcript contained both the direct and cross examinations so a balanced view was presented to the jury, and Dr. Yerks was the only witness competent to testify to causation, about which the jury was at an impasse. In essence, Litherland does not allege anything more than a general potential for harm and has no evidence to support her position other than an adverse verdict. Therefore, Litherland has failed to show how she was prejudiced when the trial court permitted the jury to review Dr. Yerks's deposition testimony. As a result, there was no error.

### CONCLUSION

In light of the disposition of the issues set forth above, we find that the trial court properly denied Litherland's motion to continue the trial or in the alternative to exclude evidence, inasmuch as she has waived the issue. We also conclude that the trial court acted properly under Jury Rule 28 when the jury was permitted to review Dr. Yerks's deposition during their deliberations.

Judgment affirmed.

BROOK, C.J., and SHARPNACK, J., concur.