Tony PERRY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0609–CR–508.

Court of Appeals of Indiana.

June 5, 2007.

Michael R. Fisher, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Tony Perry appeals his convictions for Murder,[1] a felony, and Aggravated Battery,[2] a class B felony. Specifically, Perry argues that (1) the trial court erroneously declared the jury to be at an impasse and (2) a scrivener's error in the trial court's response to a jury question resulted in "incalculable" prejudice. Appellant's Br. p. 12. Concluding that the trial court erroneously declared the jury to be at an impasse and that the scrivener's error was prejudicial, we reverse the decision of the trial court and remand this cause for a new trial.

## FACTS[3]

Late on the evening of March 6, 2005, Perry, Richard Bailey, Lawan Bailey, Mark Owens, and Michael Chowning gathered on an eastside Indianapolis street. After discussing their plans for the evening, the men decided that they would drive to the westside of the city. Richard and Owens went to Richard's vehicle, Chowning and Perry went to Chowning's vehicle, and Lawan went to his own vehicle. Chowning asked Perry to get him some ecstasy, and Perry exited his vehicle with Chowning's handgun and walked towards Richard. Perry approached Richard as he was getting into his vehicle and asked him if he had "some pills." Tr. p. 199. Richard responded, "I don't do that," and slammed the car door. *Id.* Perry fired at least two gunshots through the glass,

---

1. Ind.Code § 35–42–1–1.

2. I.C. § 35–42–2–1.5.

3. We pause to note that the facts presented herein stem from the version of events most favorable to the verdict. In light of our ultimate conclusion to remand this cause to the trial court for a new trial, we emphasize that we make no factual findings regarding the events surrounding Richard's death.

hitting Richard in the head and Owens in the hand. Perry fled to Chowning's vehicle and the men quickly left the area. Owens observed Richard "choking" and went to a neighboring house to seek help. *Id.* at 209.

Indianapolis Police Department Officer Joshua Barker was dispatched to the scene. Officer Barker found Richard Bailey slumped over the steering wheel of his vehicle with a gunshot wound to the head. Richard and Owens were transported to a local hospital, where Richard was pronounced dead.

On June 1, 2005, Chowning met with Indianapolis Police Department Detective Leslie Van Buskirk and gave a statement implicating Perry as the shooter after the detective told Chowning that "he needed to cover his own rear end, which was exposed." *Id.* at 783. On June 9, 2005, Perry was charged with murder, class B felony aggravated battery against Owens, class C felony battery against Owens, and class A misdemeanor carrying a handgun without a license.

A three-day jury trial began on July 17, 2006. Owens testified at trial but was unable to identify the shooter because he had only had a "brief look at him" during the encounter and had never seen him before. *Id.* at 201, 206. Chowning also testified, but his testimony was inconsistent with his previous statement to Detective Van Buskirk, so he was declared an adverse witness. During his testimony, Chowning was reluctant to admit to the content of his prior statement and stated that he didn't remember anything because he "drink[s] a lot." *Id.* at 284. Eventually, Chowning—referring to his previous statement—stated, "[I]f I said it, then that's what I said" and "I don't remember saying it but ... it's in black and white, clear as day." *Id.* at 289.

After the presentation of evidence, the jury began deliberations at 3:30 p.m. on July 19, 2006. A few hours into deliberations, the jury submitted a two-part question (Jury Note # 1) asking the court to (1) clarify the burden of proof and the concept of reasonable doubt and (2) asking "[w]hat happens if we can't come to a unanimous decision?" Appellant's App. p. 163. The trial court consulted with the parties and ruled without objection that the jury would be brought into open court for each party to respond to the first part of the jury's question. The trial court advised the jury that it was "not going to address [the jury impasse inquiry] right now [because] it's too early and we just don't talk about those kind of things." Tr. p. 947. The parties addressed the jury regarding the burden of proof and reasonable doubt, and the jury was excused to resume deliberations.

Later that day, the jury submitted another question (Jury Note # 2) asking if it could "listen [to the] latter part of Michael Chowning's testimony[.]" Appellant's App. p. 164. The trial court submitted the following response:

Mr. Chowning's testimony lasted almost two hours. Normally, you must listen to a witnesses' entire testimony when there is a question. However, if there is a specific dispute you have about his testimony, please let us know your question and perhaps we can provide an answer.

*Id.* at 166. In response, the jury submitted another question (Jury Note # 3):

During Michael Chowning's testimony, he waivered [sic] on what he had previously stated in his interview with the Detective in June 2005 and during his deposition in March 2006. We want to know if Michael stated during his testimony that he saw Tony shoot a gun? Additionally, did Michael *finally* agree that what was written in his interview

with the detective was correct? (Example—Michael said something like, "If it's in black + white, then I said it.") This was during the time he became a hostile witness.

*Id.* at 167–68 (emphasis in original). The trial court asked the jury to "clarify your questions because the questions" contained "some presumptions." *Id.* at 169.

The jury responded with four specific questions (Jury Note # 4):

1. At any time, did Michael state he saw Tony shoot a gun?

2. Was Michael asked by Det. B in Michael's interview ["]how many times do you remember Tony firing shots?["]

3. Did Michael reply, ["]Maybe like a couple?["]

4. Did Michael say, "If it's in black and white, then I said it."?

*Id.* at 169–70. After consulting with the parties, the trial court declared that the jury had reached an impasse pursuant to Indiana Jury Rule 28. The trial court specifically noted that the jury had submitted four notes since it began deliberations and that it had previously implied that it might not be able to reach a unanimous verdict in Jury Note # 1, which had been submitted "three or four hours" earlier. Tr. p. 960. Perry, through counsel, objected that this was not the "appropriate situation" to utilize Jury Rule 28 and, instead, suggested that the jury hear Chowning's testimony in its entirety. *Id.* at 962. The trial court asked Perry's counsel to acknowledge the proposed answers to Jury Note # 4, and his counsel agreed that the first answer should be "no" but stated that he could not agree with the other three responses because, "I'm not saying that I disagree those are the answers, I'm just saying that I don't [remember]." *Id.* at 958–59.

The trial court typed the questions and answers to Jury Note # 4 and submitted them to the jury at 12:55 a.m.:

(1) At any time, did Michael state he saw Tony shoot a gun? *No.*

(2) Was Michael asked by Det. B. in Michael's interview, "How many times do you remember Tony firing shots?" *Yes.*

(3) Did Tony[4] reply, "Maybe like a couple?" *Yes.*

(4) Did Michael say, "If it's in black and white, then I said it?" *Yes.*

Appellant's App. p. 171 (emphasis in original). One hour later, the jury found Perry guilty as charged. The State informed the trial court that it was not going to proceed to sentencing on the class A misdemeanor carrying a handgun without a license charge, and the trial court subsequently dismissed that charge.

The trial court held a sentencing hearing on August 17, 2006, and the class C felony battery conviction was merged with the class B felony aggravated battery conviction. The trial court sentenced Perry to sixty years imprisonment for the murder conviction and ten years imprisonment for the class B felony aggravated battery conviction. The trial court ordered the sentences to run consecutively, for an aggregate sentence of seventy years imprisonment. Perry now appeals.

## DISCUSSION AND DECISION

The gravamen of Perry's argument focuses on Jury Note # 4, the trial court's declaration of a jury impasse, and the typographical error contained in its response to the jury's questions. Specifically, Perry argues that the trial court erred when it "misstated the testimony of a witness[,]" which resulted in "incalculable" prejudice.

---

**4.** The third part of Jury Note # 4 asked if Michael had made this statement.

Appellant's Br. p. 12. Perry also makes a broad challenge to the trial court's responses to Jury Notes # 1, # 2, and # 3.

Indiana Code section 34–36–1–6 governs the procedure for responding to jury questions. It states that if, after the jury retires for deliberations, there is a disagreement among the jurors as to any part of the testimony or the jury desires to be informed as to any point of law arising in the case, the trial court must give the information required in the presence of, or after notice to, the parties or the attorneys representing the parties.

*I. Jury Notes # 1, # 2, and # 3*

■ As noted above, the gravamen of Perry's argument focuses on Jury Note # 4 and the trial court's response to that note. However, Perry briefly mentions Jury Notes # 1, # 2, and # 3 and "takes issue with the entire procedure of the trial court in responding to jury questions in this case." Appellant's Br. p. 11. To the extent that Perry claims error in the trial court's response to the first three jury notes, he has waived this argument on appeal because there is no evidence that he objected to the trial court's responses to these notes. *Bruno v. State*, 774 N.E.2d 880, 883 (Ind.2002). We will review an issue that was waived at trial if we find fundamental error, but to succeed, the defendant must prove that the error was so prejudicial as to make a fair trial impossible. *Id.*

Here, we find no fundamental error. The record shows that the trial court consulted with the parties and, in response to Jury Note # 1, allowed each party to address the jury regarding the burden of proof/reasonable doubt question. Tr. p. 944–57. Perry fails to direct us to evidence of the trial court's alleged error and does not cogently argue that the trial court's responses to Jury Notes # 1, # 2, or # 3 made a fair trial impossible.

*II. Jury Note # 4*

Perry disagrees that the jury was at an impasse when the trial court utilized Indiana Jury Rule 28 to respond to Jury Note # 4. Additionally, Perry argues that the trial court's response misstated Chowning's testimony and contained a prejudicial scrivener's error.

*A. Jury Impasse*

■ Prior to the adoption of Indiana's new jury rules,[5] the generally accepted procedure in answering a jury question was to reread all of the instructions to the jury to avoid emphasizing any particular point and not to qualify, modify, or explain the instructions in any way. *Massey v. State*, 803 N.E.2d 1133, 1137 (Ind.Ct.App. 2004). However, the new jury rules provide trial courts with greater flexibility in responding to jury questions. *Id.* Indiana Jury Rule 28 instructs trial judges on how to proceed when faced with a jury impasse:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

*Litherland v. McDonnell* was the first appellate case to address jury impasses in light of Jury Rule 28. 796 N.E.2d 1237, 1241 (Ind.Ct.App.2003). The *Litherland* court defined an "impasse" as " 'a position

**5.** The Indiana Jury Rules were adopted December 21, 2001, and went into effect on January 1, 2003.

from which there is no escape, a deadlock'" and defined a "deadlock" as "'a condition or situation in which no progress or activity is possible; a complete standstill; a lack of progress due to irreconcilable disagreement or equal opposing forces.'" *Id.* at 1241–42 (quoting *The New Shorter Oxford English Dictionary* 1318 (1993)).

Our Supreme Court recently held that a juror's comment that it was going to be a "long night" after the jury had presented the trial court with a question of law did not amount to a jury impasse; therefore, the trial court's utilization of Jury Rule 28 was "premature." *Ronco v. State*, 862 N.E.2d 257, 260 (Ind.2007). Our Supreme Court emphasized that a "question is not an impasse" and concluded that Jury Rule 28 confers discretionary authority for further proceedings "only at moments of impasse, by which is meant something far closer to a deadlocked jury than occurred here." *Id.* "Indication of an impasse must come from the jury's leader or from the jury as a whole." *Id.*

Here, we find *Ronco* instructive and hold that the trial court improperly determined that the jury had reached an impasse. While the second part of Jury Note # 1 asked the trial court what would happen if the jury could not "come to a unanimous decision," appellant's app. p. 163, that note was submitted "three or four hours" before the trial court declared the impasse, tr. p. 960, and the jury had continued to deliberate and submit questions after that initial note. Furthermore, the trial court admitted that "the best

procedure might be to ask [the jury] to come out here and ask them if they were at an impasse ... [b]ut it would probably require deliberation on that question before we could get an answer from them. So I'm loathe to do that." *Id.* at 961. However, our Supreme Court explicitly stated that "[a] question is not an impasse," *Ronco*, 862 N.E.2d at 260, and the jury in this case gave the trial court no indication that it was deadlocked and not able to progress further. Therefore, we find that the trial court erroneously determined that the jury had reached an impasse and prematurely utilized Jury Rule 28.

### B. Response to Jury Note # 4

 As did our Supreme Court in *Ronco*, it is possible to determine that the trial court's response to Jury Note # 4 was proper even though the trial court erroneously invoked Jury Rule 28. *See id.* (determining that the trial court's response was proper under Indiana Code section 34–36–1–6). Here, the parties stipulated to the trial court's responses to the questions posed in Jury Note # 4.[6] Therefore, we find that it was not improper for the trial court to respond to Jury Note # 4 in accordance with the parties' stipulation.

### C. Scrivener's Error

 After the parties stipulated to the trial court's answers to Jury Note # 4, the trial court typed the questions and answers and submitted the following response to the jury at 12:55 a.m.:

---

**6.** When asked for his opinion on the trial court's proposed responses to Jury Note # 4, Perry's counsel stated, "I'm not saying that I disagree those are the answers, I'm just saying that I don't [remember]." Tr. p. 958–59. As we have previously held, the complaining party may not object in general terms but must state an objection with specificity. *Marlatt v. State*, 715 N.E.2d 1001, 1002 (Ind.Ct. App.1999). Because Perry's counsel did not specifically object to the trial court's proposed answers, we find that Perry stipulated to the trial court's responses—specifically, that the first question would be answered in the negative and that the last three questions would be answered in the affirmative.

(1) At any time, did Michael state he saw Tony shoot a gun? *No.*

(2) Was Michael asked by Det. B. in Michael's interview, "How many times do you remember Tony firing shots?" *Yes.*

(3) Did Tony reply, "Maybe like a couple?" *Yes.*

(4) Did Michael say, "If it's in black and white, then I said it?" *Yes.*

Appellant's App. p. 171 (emphasis in original).

As Perry notes on appeal, the trial court referenced *his* first name—Tony—when it answered the third question, but the jury had referenced a State's witnesses—Michael Chowning—when it asked "Did Michael reply, 'Maybe like a couple?'" Appellant's App. p. 170. Perry argues that "[t]he only meaning conveyed by this [error] to the jury is that Mr. Perry admitted that he fired shots" and that the "prejudice attaching to this misstatement is incalculable." Appellant's Br. p. 12. While the State argues that the jury was not "misled or confused" by the trial court's typographical error, appellee's br. p. 15, it is impossible for us to know what effect the scrivener's error had on the jury. As we have already concluded, the parties stipulated to the trial court's answers to the jury's questions, but by erroneously inserting Perry's first name into question three, the trial court gave the jury a version of the questions and answers that Perry *had* not stipulated to. Neither the parties nor the trial court recognized the error, and the jury returned a guilty verdict one hour later. The jury was never informed of the mistake and the trial court did not question the jury to make sure that it had understood that the third question should have referred to Michael, not Tony.

██ We emphasize that a trial court's typographical error does not necessarily mandate reversal. *See, e.g., Broadus v.*

*State,* 487 N.E.2d 1298, 1306 (Ind.1986) (holding that a typographical error on the jury verdict form was harmless error because the trial court polled the jurors after the mistake was discovered to make sure that they understood the verdict that they had entered); *Elmore v. State,* 688 N.E.2d 213, 220 (Ind.Ct.App.1997) (holding that a final jury instruction containing the cause number "241" instead of "214" was not reversible error because it would not have been reasonable for the jury to conclude that defendant had been charged with an additional conviction). And we acknowledge that " 'an error in the instruction of the jury does not require reversal if the conviction is *clearly* sustained by the evidence and the jury could not properly have found otherwise.' " *Elmore,* 688 N.E.2d at 219 (quoting *Burton v. State,* 526 N.E.2d 1163, 1166 (Ind.1988)) (emphasis added).

Here, however, the evidence of Perry's guilt was not overwhelming—as demonstrated by the jury's extensive deliberations—and we cannot say that it would have been improper for the jury to have acquitted Perry because the jury notes make it clear that the jurors were uncertain about the evidence presented at trial. In sum, we cannot say that the trial court's error did not influence the jury's verdict, thereby prejudicing Perry and resulting in seventy years of imprisonment. For that reason, we reverse the trial court's conviction and remand this cause for a new trial.

The decision of the trial court is reversed and this cause is remanded for a new trial.

FRIEDLANDER, J., concurs.

CRONE, J., dissents with opinion.

CRONE, Judge, dissenting.

"It has been held repeatedly that a defendant is not entitled to a perfect trial,

but is entitled to a fair trial, free of errors so egregious that they, in all probability, caused the conviction." *Averhart v. State,* 614 N.E.2d 924, 929 (Ind.1993). I respectfully disagree with the majority's conclusion that the trial court's typographical error in its response to Jury Note # 4 is so egregious that it warrants the reversal of Perry's convictions. Therefore, I dissent.

I would hold that Perry procedurally defaulted this issue by failing to object to the typographical error. Perry's counsel read, signed, and "time-stamped" the trial court's response and did not bring the typo to the court's attention. Tr. at 957–64; Appellant's App. at 172. "A party may not sit idly by, permit the court to act in a claimed erroneous manner, and subsequently attempt to take advantage of the alleged error." *Bunting v. State,* 854 N.E.2d 921, 924 (Ind.Ct.App.2006), *trans. denied.*

Having waived this issue, Perry must establish fundamental error to warrant reversal. I do not believe that the mistake in this case rises to that level. "The fundamental error exception to the waiver rule is an extremely narrow one. To constitute fundamental error, the error must be a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Weis v. State,* 825 N.E.2d 896, 902 (Ind.Ct.App.2005) (citation omitted). I find it extremely unlikely that the typo misled the jury and resulted in Perry's conviction. The jury submitted the original set of four questions, all of which related to Chowning's testimony and his interview with Detective Van Buskirk. The second of these references a question that Detective Van Buskirk asked Chowning; I seriously doubt that the ensuing typo led the jury to believe that Perry answered that question. Perry characterizes the prejudice resulting from the typo as "incalculable." I would characterize it as minimal and certainly not rising to the level of fundamental error. I would therefore affirm Perry's convictions.