Keith A. PARKS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 70A01–0907–CR–355.

Court of Appeals of Indiana.

Feb. 18, 2010.

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–43–2–1(1)(B)(i).

2. Ind.Code § 35–43–4–2(a).

## OPINION

MAY, Judge.

Keith Parks appeals his convictions of Class B felony burglary[1] and Class D felony theft,[2] along with an habitual offender enhancement.[3] Parks argues the trial court erred by replaying a witness's testimony for the jury during deliberations and there was insufficient evidence to support the habitual offender enhancement. We affirm.

### FACTS AND PROCEDURAL HISTORY

On October 31, 2008, Kelly Richardson arrived home and noticed a car parked near her front porch. When she went inside the house, she found two men attempting to dismantle her computer. Kelly knew one of the men was Parks, because she had been friends with Parks when they were teenagers, and they had remained on friendly terms throughout the years.

Parks, who had something under his shirt, ran out the back door of the house. Kelly went out the front door to the porch, and she saw Parks get in the car parked nearby. Kelly called Parks by name, and he "bowed his head and said it's not me." (Tr. at 231.) The other man ran out the door from the laundry room. He had something underneath his shirt, and he got into the car with Parks. Parks backed out of the driveway and drove away.

Kelly called 911, and then called her husband, Tim. Kelly and Tim inventoried their home and determined they were missing a PlayStation 3, the PlayStation remotes, a Guitar Hero game, and a digital camera.

3. Ind.Code § 35–50–2–8.

Kelly knew Parks' father, Terry, had a store in New Castle. The day after the burglary, Tim went to Terry's store and gave Terry his cell phone number. About half an hour later, Tim received a call from a man who identified himself as "Keith" and said "my dad said I should call you [']cause you said I robbed your house yesterday." (*Id.* at 272.) Parks said he had not been at the Richardsons' house and claimed he had been at home watching his children all day. However, Parks said, "I can see what I can do about getting your stuff back." (*Id.* at 273.)

Parks was charged with Class B felony burglary and Class D felony theft. The State later amended the information to include an habitual offender count.

Thereafter, Parks called Tim and said he would replace the missing items if the Richardsons would drop the charges. He offered to buy new items and told Tim he could come to the store and pick them up. Tim called the police and told them about the call. Tim then called Parks back and said "the officer said for you to just bring the stuff and … come on down to the jail." (*Id.* at 274.) Parks said "that's not what he wants to do right now," but he said he would turn himself in later. (*Id.*)

At trial, Tim also testified Parks' father Terry offered to resolve the matter by giving him and Kelly their things back, plus $2,000. Parks objected to Tim's testimony about the content of the conversation, and the court sustained the objection. Parks did not ask for the testimony to be stricken from the record or for the jury to be admonished.

Parks presented testimony from his wife and his wife's boss in an attempt to establish he was with his wife at the time of the offense. After Parks rested, the jury submitted questions pertaining primarily to Parks' alibi defense. After consulting with the attorneys, the court informed the jury that the witnesses had left the stand, and they were therefore unable to answer questions.

The jury was sent to deliberate on the burglary and theft charges at 5:12 p.m. About two hours later, the jury was brought into the courtroom, and the following conversation occurred:

Court: … [D]o you think the jury is close to reaching a verdict? I'm sorry I need that verbally for the record.

Foreperson: No I'm afraid we're not.

Court: Okay is there, uh, anything that, that either the Court or the, uh, counsel can do which would assist you and the jury in your deliberations?

Foreperson: I think if we had a couple questions answered it's very possible.

Court: Okay … what I would like to do then is, um, for you to return to the jury room and, and put those questions in, in writing.

(*Id.* at 384.)

About ten minutes later, the jury sent out two questions: whether Parks had been interviewed and why some of the State's witnesses had not testified. The parties and the court agreed the questions could not be answered. The jury was brought into the courtroom and was informed the questions could not be answered. The foreperson then indicated the jury wanted a transcript of Tim's testimony. The court told the jury to return to the jury room and continue discussing what other assistance might be rendered while the court and the parties discussed the possibility of replaying Tim's testimony. After the jury had returned to the jury room, Parks objected to replaying Tim's testimony, arguing it would draw too much attention to a single witness's testimony.

The court made no ruling at that time, but around 9:00 p.m., the court went on record and told the parties:

> [T]he bailiff has indicated, uh, that ... the jury has, um been working on their issues and deliberating, continuing to deliberate, but are now at the point that they do want to know whether they are going to get to hear the, uh, the testimony. Um, so that they are still having difficulty with that testimony....

(*Id.* at 393.) The court stated the jury was at an impasse and indicated it would allow Tim's testimony to be replayed to the jury. Parks again objected "based on the jury's previous questions and things that have occurred." (*Id.* at 397.)

The court replayed Tim's testimony for the jury, but the parts to which Parks had objected were redacted. The court then asked if further assistance was needed, but the foreperson indicated rehearing the testimony had "cleared up a couple items ... [t]hat we were talking about." (*Id.* at 405.) About twenty minutes later, the jury returned a verdict of guilty on both the burglary and theft counts.

At the habitual offender phase of the trial, the State admitted several documents into evidence and then rested. Parks moved for a directed verdict, which was denied, and then he rested without presenting evidence. The jury returned a verdict that indicated it had found Parks had committed all the alleged predicate felonies and that he was an habitual offender.

## DISCUSSION AND DECISION

Parks asserts the trial court erred by replaying Tim's testimony, and there was insufficient evidence to support the habitual offender enhancement.

### 1. *Replaying Testimony*

■ Under our Jury Rules, which went into effect in 2003, trial courts "have greater leeway to 'facilitate and assist jurors in the deliberative process, in order to avoid mistrials.'" *Ronco v. State*, 862 N.E.2d 257, 259 (Ind.2007) (quoting *Tincher v. Davidson*, 762 N.E.2d 1221, 1224 (Ind. 2002)). Ind. Jury Rule 28 provides:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

"Impasse" is "a position from which there is no escape, a deadlock." *Litherland v. McDonnell*, 796 N.E.2d 1237, 1242 (Ind.Ct. App.2003) (quoting *The New Shorter Oxford English Dictionary* 1318 (Thumb Index ed. 1993)), *trans. denied*.

■ Relying on *Ronco*, Parks argues the jury was not at an impasse. Ronco was charged with resisting law enforcement by fleeing and by forcibly resisting. The jury expressed confusion as to whether the State had to prove the elements of both fleeing and forcibly resisting. The trial court responded with a note asking the jury to reread the instruction. One juror indicated he still did not understand the instruction and stated "it was going to be a long night." *Ronco*, 862 N.E.2d at 258. The trial court determined the jury was at an impasse and had the jury brought into the courtroom. The trial court reread the instruction, then explained that there were two types of resisting law enforcement, and Ronco could be guilty of both, neither, or one or the other.

The jury found Ronco guilty of resisting law enforcement, and on appeal, Ronco argued the trial court erred by determining the jury was at an impasse in the meaning of Jury R. 28. Our Indiana Supreme Court agreed:

> In this case, jurors simply had a question about the findings necessary to convict Ronco for resisting law enforcement. A question is not an impasse. Nor does one juror's "long night" comment suffice; indication of an impasse must come from the jury's leader or from the jury as a whole.

*Id.* at 260. However, our Supreme Court found the trial court's additional instructions to the jury were proper under Ind. Code § 34-36-1-6, which provides:

> If, after the jury retires for deliberation:
>
> (1) there is a disagreement among the jurors as to any part of the testimony; or
>
> (2) the jury desires to be informed as to any point of law arising in the case;
>
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

In *Perry v. State*, 867 N.E.2d 638, 643 (Ind.Ct.App.2007), *trans. denied*, we held the trial court improperly invoked Jury R. 28. During deliberations, the jurors sent out a note asking what would happen if they could not come to a unanimous decision. The trial court told the jury it would not answer that question. The jury continued to deliberate for three or four more hours and sent out three more notes containing questions. When the court received the fourth note, it determined the jury was at an impasse and answered the questions. The only indication that the jurors were deadlocked was their question about what would happen if they did not reach a unanimous decision, yet the jury continued to deliberate for several hours; therefore, we concluded the trial court erred by invoking Jury R. 28.

In Parks' case, the jury submitted several questions that were not answered. The foreperson indicated the jury was not close to reaching a verdict and requested a transcript of Tim's testimony. The court asked the jury to continue deliberating and to determine whether there was anything else the court could do to help. After an hour, the jury had asked no additional questions but again asked to hear Tim's testimony. Unlike in *Ronco*, the court in Parks' case communicated directly with the jury's foreperson, and unlike in *Perry*, the jury was unable to progress after it requested Tim's testimony. Therefore, we conclude the trial court did not err by invoking Jury R. 28.

██ Alternatively, Ind.Code § 34-36-1-6 requires the trial court to replay testimony when the jury expresses disagreement as to any part of the testimony. The foreperson's comment that rehearing Tim's testimony had "cleared up a couple items ... [t]hat we were talking about," (Tr. at 405), suggests there might have been a disagreement about his testimony. However, the mandatory provisions of Ind. Code § 34-36-1-6 do not come into play unless the jury explicitly indicates a disagreement. *Bouye v. State*, 699 N.E.2d 620, 628 (Ind.1998). Nevertheless, even when the statute is not triggered, a court has discretion to replay testimony. *Pettrie v. State*, 713 N.E.2d 910, 913 (Ind.Ct.App. 1999); *Grayson v. State*, 593 N.E.2d 1200, 1206 (Ind.Ct.App.1992).

██ Parks argues replaying Tim's testimony was unfairly prejudicial in light of the fact that: (1) the prosecutor erroneously stated in his opening statement that Parks had offered Tim $2,000 to drop the charges; and (2) Tim's testimony that Ter-

ry offered him $2,000 was not stricken from the record. We note Parks did not ask for the testimony to be stricken; nevertheless, when Tim's testimony was replayed, that portion of the testimony was redacted. The jury was instructed that the attorneys' statements were not evidence, and it is not apparent that replaying Tim's testimony would cause the jury to remember, much less believe, the prosecutor's misstatement. If anything, it would seem to highlight that the prosecutor misspoke.[4] We conclude replaying the testimony was not unfairly prejudicial to Parks, and the court acted within its discretion.

### 2. *Habitual Offender*

■■■ Parks argues the State presented insufficient evidence that he was an habitual offender.

> In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact.
>
> To establish that the defendant is an habitual offender, the State must prove beyond a reasonable doubt that the defendant has been previously convicted of two separate and unrelated felonies. I.C. § 35–50–2–8 (West's 2004). To be "unrelated," the commission of the second felony must be subsequent to the sentencing for the first, and the sentencing for the second felony must have preceded the commission of the current felony for which the enhanced sentence is being sought. Failure to prove the proper sequencing requires that the habitual offender determination be vacated.

*Firestone v. State,* 838 N.E.2d 468, 472–73 (Ind.Ct.App.2005) (footnote and some citations omitted).

The verdict form submitted to the jury read as follows:

> We, the Jury, find the defendant, Keith A. Parks, has the following prior convictions:
>
> 1. On the 7th day of February, 2005 in Marion Superior Court 99, State of Indiana, Cause No. 49G99–0408–FD–156317 a judgment of conviction was entered against Keith A. Parks on a felony, to-wit: Theft, for which offense the Defendant was sentenced to a term of one hundred eighty (180) days to the Indiana Department of Corrections. Said offense being committed on August 29, 2004.
>
>     [ ] YES
>
>     [ ] NO
>
> 2. On the 24th day of January, 2005, in the Delaware Circuit Court 5, State of Indiana, Cause No. 18C05–0409–FD–119, a judgment of conviction was entered against Keith A. Parks on a felony, to-wit: Theft, for which offense the Defendant was sentenced to a term of eighteen (18) months to the Indiana Department of Corrections. Said offense being committed on January 18, 2004.
>
>     [ ] YES
>
>     [ ] NO

---

4. In a sidebar, the prosecutor indicated he had expected Tim to testify that Parks made the offer of $2,000. Parks did not argue at trial or in his appellant's brief that the prosecutor's misstatement was willful. In his reply brief, Parks makes reference to the standard for prosecutorial misconduct, but he may not raise an issue for the first time in his reply brief. *See Carden v. State,* 873 N.E.2d 160, 162 n. 1 (Ind.Ct.App.2007).

3. On the 24th day of November, 2004, in the Henry Superior Court II, State of Indiana, Cause No. 33D02–0409–FD–239, a judgment of conviction was entered against Keith A. Parks on a felony, to-wit: Receiving Stolen Property, for which offense the Defendant was sentenced to a term of three (3) years to the Indiana Department of Corrections. Said offense being committed on September 8, 2004.

[ ] YES

[ ] NO

4. On the 3rd day of January, 1994, in the Henry Superior Court II, State of Indiana, Cause No. 33D02–9307–CF–110, a judgment of conviction was entered against Keith A. Parks on a felony, to-wit: Theft, for which offense the Defendant was sentenced to a term of two (2) years to the Indiana Department of Corrections. Said offense being committed on July 14, 1993.

[ ] YES

[ ] NO

5. On or about the 31st day of October, 2008, in Rush County, Indiana, ... Keith A Parks broke and entered the building or structure of another person, to-wit: dwelling belonging to Kelly Richardson with intent to commit a felony therein, namely Theft, all of which is against the peace and dignity of the State of Indiana and contrary to the form of the statute made and provided in such case, to-wit: I.C. 35–43–2–1 and constitutes a Class "B" Felony.

[ ] YES

[ ] NO

6. On or about the 31st day of October, 2008, in Rush County, Indiana, ... Keith A. Parks did, knowingly or intentionally, exert unauthorized control over the property of another person, to-wit: Sony playstation 3, 2 wireless remotes, video game, and a digital camera belonging to Kelly Richardson with intent to deprive the other person of any part of its value or use. All of which is against the peace and dignity of the State of Indiana and contrary to the form of the statute made and provided in such case, to-wit: I.C. 35–43–4–2(A) and constitutes a Class "D" Felony.

VERDICT:

We, the jury, find that the Defendant, Keith A. Parks:

[ ] is

[ ] is not

an habitual offender.

(Appellant's App. at 131–33.)

■ The jury found Parks committed each of the alleged felonies and found him an habitual offender. The fifth and sixth felonies listed on the verdict form are the instant offenses, and they were committed after Parks was sentenced for the other four felonies. The documentation admitted by the state shows the other four felonies were resolved by plea agreements, and sentencing took place on the same date the convictions were entered. Parks committed and was sentenced on the Henry County theft before he committed any of the other felonies. The Delaware County theft, the Marion County theft, and the Henry County receiving stolen property convictions all overlapped with each other, but any of these individually would be in proper sequence with the Henry County theft and the instant offenses to justify the habitual offender finding.

■ Nevertheless, Parks argues the verdict form does not explicitly show that the jury found the State proved the proper sequence. That same argument was considered and rejected in *Rainey v. State*, 557 N.E.2d 1071, 1076 (Ind.Ct.App.1990), *overruled on other grounds by Seay v. State*, 698 N.E.2d 732 (Ind.1998). The

jury may be requested to make specific findings so that the validity of the habitual offender enhancement may be determined in the event a predicate felony is later overturned, but there is no requirement that the verdict form specify all the necessary findings. *See Spivey v. State,* 638 N.E.2d 1308, 1310–11 (Ind.Ct.App.1994).

Parks also argues the State presented insufficient evidence that he is the same Keith Parks identified in the documents the State admitted into evidence. We disagree. The State's Exhibit 10 was Parks' jail records, which include a picture of Parks. The jury could readily ascertain whether he was the same Keith Parks identified in the jail records. Exhibit 10 also includes Parks' date of birth and social security number. Exhibit 13 shows the same date of birth and social security number in documents relating to Parks' Delaware County theft conviction. Exhibits 12 and 14, which contain documentation relating to Parks' Henry County receiving stolen property conviction and his Marion County theft conviction, respectively, show the same date of birth. These identifiers were sufficient to prove Parks is the man identified in those documents. *See Toney v. State,* 715 N.E.2d 367, 369 (Ind.1999) (documentation listing defendant's name, gender, race, and birthdate sufficient to prove defendant was the same person who committed a previous felony).

Parks was not prejudiced by the trial court's replaying of witness testimony, and the State presented sufficient evidence to prove Parks was an habitual offender. Therefore, we affirm his convictions and sentence enhancement.

Affirmed.

DARDEN, J., and KIRSCH, J., concur.