# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2016, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Joshua H. Field,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 26, 2016

Court of Appeals Cause No.
11A04-1505-CR-296

Appeal from the Clay Circuit Court

The Honorable Joseph D. Trout, Judge

Trial Court Cause No.
11C01-1412-F5-947

**Barnes, Judge.**

# Case Summary

Joshua Field appeals his convictions for Level 5 felony intimidation and Class A misdemeanor theft. We affirm.

# Issues

Field raises two issues, which we restate as:

    I.    whether the trial court properly allowed the jury to hear the recording of the 911 call twice during deliberations; and

    II.    whether the evidence is sufficient to support his conviction for Level 5 felony intimidation.

# Facts

Field and Mary Riddell dated, and Field lived with Riddell until October 2014, when they broke up and Field moved out. Dustyn Clark also lived at the residence.

On November 21, 2014, Field and Riddell argued over the telephone. Riddell was getting ready for bed when she heard a loud noise from a truck outside. Riddell woke Clark up, and when Clark opened the front door, Field pushed his way into the house. Clark's girlfriend, Shelby Hull, woke up because Field was yelling. Hull went into the living room and saw that Field had a "machete." Tr. p. 272. She told him to put it away, and he said, "If anybody's here, I'm going to kill them." *Id.* Hull told Field that no one was there, and he put the machete away. Field went into Riddell's bedroom, smelled a pair of her

underwear, ripped the underwear, took some of her money, and returned to the living room. Hull called 911 for assistance, and when Field realized that Hull had called 911, Field "started going crazy and yelling and waiving [sic] the machete everywhere." *Id.* Riddell got on the telephone with the 911 operator because Hull did not know the address, and Hull got in front of Riddell to protect her from Field. Field then left the house and damaged the porch light and porch railings with the machete as he left.

[5] Field walked to the nearby residence of Ricki Luedeman, Clark's mother. Field talked to Luedeman and then left. Officers arrived searching for Field, but they were unable to locate him. After the officers left, Field knocked on Luedeman's door again, but Luedeman made him leave. The next day, Luedeman found a machete on her property.

[6] The State charged Field with Level 5 felony intimidation, Class A misdemeanor theft, and Class B misdemeanor criminal mischief. With respect to the intimidation charge, the State alleged that Field:

> did communicate a threat to [Riddell] with the intent that
> [Riddell] be placed in fear of retaliation for a prior lawful act to
> wit: swinging a large knife in the presence of Mary Riddell in
> retaliation for Shelby Hull and Mary Riddell calling the police to
> report [Field's] threat to kill whoever was in the house, and in
> doing so Joshua H. Field drew or used a deadly weapon to wit: a
> large knife . . . .

App. p. 93. During Hull's testimony during the jury trial, the State played the recording of the 911 call to the jury. During deliberations, the jury requested to listen to the recording of the 911 call twice. The trial court noted:

> [W]hen the jury first heard the recording they were approximately I'd say fifteen (15) to twenty (20) feet away from the speakers that the State was using to play the 911 call, and it was somewhat difficult to hear, especially in regard to the catch of voices in the background. By stipulation and agreement of the parties, the jury was brought back into Court . . . . They listened to the recording and returned to the jury room. Subsequently, there was additional request by the jury to hear the 911 call again. . . . . [A]pparently and we'll never know, there was something that someone . . . there perhaps a discrepancy between jurors as to what they heard the first time and it was played again. No objection from the State, the defense did object to them listening to the 911 call for a second time. The Court allowed the jury, without commenting on what they were listening for or what they heard, to listen to exhibit two (2) a second time and they have returned to the jury room for deliberations.

Tr. pp. 382-83. The trial court also noted that the jury had indicated to the bailiff "some confusion . . . about what they had heard" and that they needed "further clarification." *Id.* at 385. The jury found Field guilty as charged. Due to double jeopardy concerns, the trial court entered judgment of conviction for the intimidation and theft verdicts only. The trial court sentenced Field to an aggregate sentence of six years with two years suspended to probation. Field now appeals.

## Analysis

### I. Recording of 911 Call

Field first argues that the trial court abused its discretion by playing the recording of the 911 call for a second time during deliberations. Field does not challenge the earlier replaying of the recording during the jury's deliberations.

"Under our Jury Rules, which went into effect in 2003, trial courts 'have greater leeway to facilitate and assist jurors in the deliberative process, in order to avoid mistrials.'" *Parks v. State*, 921 N.E.2d 826, 830 (Ind. Ct. App. 2010) (quoting *Ronco v. State*, 862 N.E.2d 257, 259 (Ind. 2007)) (internal citations omitted), *trans. denied*. Additionally, Indiana Code Section 34-36-1-6 governs a jury's deliberations and provides:

> If, after the jury retires for deliberation:
>
> (1) there is a disagreement among the jurors as to any part of the testimony; or
>
> (2) the jury desires to be informed as to any point of law arising in the case;
>
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Regarding the second playing of the recording, the trial court here noted that the jury had indicated to the bailiff "some confusion . . . about what they had

heard" and that they needed "further clarification." Tr. p. 385. We cannot say that this record indicates that the jurors had a "disagreement." Because the record here does not reflect a disagreement over the content of the recording, the mandatory language of Indiana Code Section 34-1-21-6 does not apply. Consequently, the decision to allow the jury to listen to the recording again was a matter of the trial court's discretion. *See Blanchard v. State*, 802 N.E.2d 14, 31 (Ind. Ct. App. 2004); *Foster v. State*, 698 N.E.2d 1166, 1170 (Ind. 1998). The trial court "must exercise its discretion extremely cautiously . . . ." *Foster*, 698 N.E.2d at 1170.

[10] Field argues that replaying the recording a second time during deliberations unduly emphasized one piece of evidence. He suggests that the jury based its guilty finding "largely on that piece of evidence." Appellant's Br. p. 13. We conclude that the trial court was well within its discretion to replay the recording for the jury. The trial court first replayed the recording because the jury had been seated fifteen to twenty feet from the speakers, and the jurors sought to sit closer to the speakers, so they could hear the recording better. The trial court then replayed the recording because the jury indicated some confusion and needed clarification. There is no indication that the jury's verdict was unduly influenced by the recording. Rather, the jury simply needed clarification, which they were entitled to receive. The trial court did not abuse its discretion by replaying the recording a second time at the jury's request during the deliberations.

## II. Sufficiency of the Evidence

Field argues that the evidence is insufficient to sustain his conviction for Level 5 felony intimidation. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

The offense of intimidation is governed by Indiana Code Section 35-45-2-1(a), which provides in part: "A person who communicates a threat to another person, with the intent . . . (2) that the other person be placed in fear of retaliation for a prior lawful act . . . commits intimidation." The offense is a Level 5 felony if "while committing it, the person draws or uses a deadly weapon." Ind. Code § 35-45-2-1(b)(2). A threat means:

> an expression, by words or action, of an intention to:
>
> (1)    unlawfully injure the person threatened or another person, or damage property;
>
> (2)    unlawfully subject a person to physical confinement or restraint;
>
> (3)    commit a crime . . . .

I.C. 35-45-2-1(d).

[13]   Here, the State alleged that Field:

> did communicate a threat to [Riddell] with the intent that
> [Riddell] be placed in fear of retaliation for a prior lawful act to
> wit: swinging a large knife in the presence of Mary Riddell in
> retaliation for Shelby Hull and Mary Riddell calling the police to
> report [Field's] threat to kill whoever was in the house, and in
> doing so Joshua H. Field drew or used a deadly weapon to wit: a
> large knife . . . .

App. p. 93.  Field argues that the State failed to demonstrate that he
communicated a threat, that he did so with the intent that Riddell be placed in
fear of retaliation for a prior lawful act, or that he drew or used the knife while
committing the offense.

[14]   The State presented evidence that Hull called 911 for assistance.  Hull testified
that, when Field realized that she had called 911, Field "started going crazy and
yelling and waiving [sic] the machete everywhere."  Tr. p. 272.  Riddell testified
that, when Field realized that they had called 911, Field "just went crazy . . .
flipping out."  *Id.* at 293.  Riddell testified that Hull stepped in front of her
because Field was "coming after" her with the knife.  *Id.*  Clark testified that
Field's behavior "got worse for sure" after they called 911.  *Id.* at 311.  Field was
waving the knife around, went outside, and said, "Why would you let them
call the cops on me, Dustyn?"  *Id.*

Field points out discrepancies in the testimonies of Hull, Riddell, and Clark and differences between their deposition testimonies and their trial testimonies. However, Field's arguments are requests to reweigh the evidence, which we cannot do. The State presented evidence that Field threatened Riddell by waving the large knife at her because Hull and Riddell called 911 to report Field's actions. We conclude that the State presented sufficient evidence that Field communicated a threat to Riddell with the intent that Riddell be placed in fear of retaliation for a prior lawful act and that Field used a knife while committing the intimidation. The evidence is sufficient to sustain Field's conviction.

## Conclusion

The trial court did not abuse its discretion by replaying the recording of the 911 call to the jury a second time during deliberations. Further, the evidence is sufficient to sustain Field's conviction for intimidation. We affirm.

Affirmed.

Robb, J., and Altice, J., concur.