## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2019, 9:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

K. Aaron Heifner
HEIFNER LAW INC.
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erick W. Mack,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 25, 2019

Court of Appeals Case No.
18A-CR-1528

Appeal from the Madison Circuit Court

The Honorable Thomas Newman, Jr., Judge

Trial Court Cause No.
48C03-1702-FA-381

**Bailey, Judge.**

# Case Summary

Erick W. Mack ("Mack") appeals his convictions of two counts of Child Molesting, one as a Class A felony and one as a Level 1 felony.[1]  We affirm.

# Issues

Mack presents three consolidated and restated issues for our review:

> I.    Whether sufficient evidence supports his convictions;
>
> II.   Whether the trial court abused its discretion in granting the jury's request to have the victim's testimony replayed; and
>
> III.  Whether Mack was entitled to a mistrial.

# Facts and Procedural History

On February 10, 2017, Mack was charged with molesting M.A., the teenage daughter of one of Mack's closest friends.  The State alleged that Mack had engaged M.A. in sexual activity several years earlier, when she was age thirteen.  Mack was tried before a jury on May 1, 2018 and convicted as charged.  On May 18, 2018, Mack was sentenced to two concurrent terms of twenty years imprisonment.  He now appeals.

---

[1] Ind. Code § 35-42-4-3(a)(1).

# Discussion and Decision

## Sufficiency of the Evidence

[4] To convict Mack of Child Molesting, as charged, the State had to prove beyond a reasonable doubt that he, being twenty-one years of age or older, knowingly or intentionally performed or submitted to sexual intercourse or other sexual conduct with M.A., a child under fourteen years of age.[2] I.C. § 35-42-4-3; App. Vol. II, pg. 75. The State presented no evidence of sexual intercourse between Mack and M.A. Pursuant to Indiana Code Section 35-31.5-2-221.5, "other sexual conduct" is an act involving a sex organ of one person and the mouth or anus of another person or penetration of the sex organ or anus of a person by an object.

[5] Upon a challenge to the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We do not reweigh the evidence or judge the credibility of witnesses. *Id.* An appellate court must affirm "if the probative evidence and reasonable inferences drawn from the

---

[2] The State alleged that Mack committed an offense on or between August 26, 2013 and June 13, 2014 and committed an offense on or between July 1, 2014 and August 25, 2014, apparently to reflect the change of category of offense, effective July 1, 2014, from a Class A felony to a Level 1 felony. Generally, time is not of the essence in the crime of child molesting. *Gaby v. State*, 949 N.E.2d 870, 876 (Ind. Ct. App. 2011). The exact date becomes important only in limited circumstances, including when the victim's age at the time of the offense falls at or near the dividing line between classes of felonies. *Id.* M.A. turned fourteen on August 26, 2014. It was incumbent upon the State to prove that the offenses occurred before she reached age fourteen.

evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.*

[6] M.A. testified regarding the allegations as follows. She and Mack were at a family bonfire and were left alone after her parents went to bed. Mack, who had been acting "flirty" and "touchy" with her, told her "he's ready to see it now." (Tr. Vol. II, pgs. 63, 68). M.A. took down her pants and underwear and Mack "touch[ed] between [her] legs with his finger … for a little bit" before they walked around the corner of the house and Mack "did oral on [her]." *Id.* at 68-69. M.A. specified that this meant Mack "put his tongue between [her] legs." *Id.* at 70. They proceeded into the house and sat on a love seat, where M.A. "performed a hand job on [Mack]." *Id.* At a separate time, Mack was driving his vehicle and M.A. was a passenger when Mack suggested that M.A. could get naked. M.A. took down her jeans and Mack placed his "finger into [her] vagina multiple times." *Id.* at 74. M.A. testified that she was thirteen years old when these events occurred.

[7] M.A.'s mother also testified that M.A. had been thirteen when she confronted Mack about her suspicions as to his interest in her daughter and Mack stopped visiting the family. M.A.'s mother further testified that, after the police investigation began, Mack had called her to say he was "sorry that it happened" and "sorry for the whole mess that happened to our family." *Id.* at 139.

[8] Mack asks that we discard M.A.'s testimony under the incredible dubiosity rule because of perceived discrepancies between her investigative interview, pretrial

deposition, and trial testimony. The "incredible dubiosity rule," which impinges on the jury's responsibility to judge the credibility of witnesses, is of limited scope. *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015). "First, the application of this rule has been restricted to cases where there is a single testifying witness." *Id.* at 757. "The second factor is whether the witness' testimony is inherently improbable, contradictory, or coerced, resulting in the testimony being incredibly dubious." *Id.* at 758. Finally, "[i]n a case where there is circumstantial evidence of an individual's guilt, reliance on the incredible dubiosity rule is misplaced." *Id.* at 759.

[9]     Here, M.A. testified unequivocally that, when she was thirteen years old, Mack had used his mouth and fingers to touch her vagina. M.A.'s mother provided some corroborative testimony that she voiced suspicion and Mack never visited the family thereafter (although they had been extremely close in the past) and Mack called to offer an apology of sorts. This was not a case of a sole witness offering dubious testimony; M.A.'s earlier lack of specificity or some discrepancy between pretrial statements and trial testimony is not a basis for application of the incredible dubiosity rule. *See Corbett v. State*, 764 N.E.2d 622, 626 (Ind. 2002) (recognizing that inconsistencies between a police statement and trial testimony does not equate to uncorroborated "testimony inherently contradictory as a result of coercion"). Sufficient evidence supports Mack's convictions.

## Replay of M.A.'s Testimony to the Jury

[10] During deliberations, the jury foreman advised the trial court that the jury needed clarification regarding M.A.'s testimony and the time frame of the offenses. The trial court advised that, if the jury was requesting to rehear M.A.'s testimony, it would be replayed in its entirety and the foreman responded that the replay "will help us." (Tr. Vol. II. Pg. 232.) Mack now argues that the replay of testimony was prejudicial to him because the replay included bench conferences and the jury was unable to examine M.A.'s demeanor.

[11] The State responds – and our examination of the transcript leads us to agree – that the record does not support Mack's assertion that bench conferences were included in the replay. As for the contention that the jurors were unable to assess M.A.'s demeanor during the replay, we agree with Mack that an audio replay is not equivalent to live testimony. Nonetheless, Indiana Code Section 34-36-1-6 requires a trial court to replay testimony when the jury expresses disagreement as to any part of the testimony and, even when the statute is not triggered, a court has discretion to replay testimony. *Parks v. State*, 921 N.E.2d 826, 831 (Ind. Ct. App. 2010), *trans. denied*. Mack's cursory claim of prejudice falls short of demonstrating that the trial court abused its discretion.

## Mistrial

[12] A mistrial is an extreme remedy appropriate only when other remedial measures are insufficient to rectify the situation. *Mickens v. State*, 742 N.E.2d

927, 929 (Ind. 2001). A trial judge has discretion in determining whether to grant a mistrial and his or her decision is afforded great deference because the trial judge "'is in the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Id.* (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). To prevail on appeal from the denial of a motion for mistrial, an appellant must establish that the questioned conduct "'was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected.'" *Id.* The gravity of the peril is determined by consideration of the misconduct's probable persuasive effect on the jury's decision, rather than the impropriety of the conduct. *Id.*

[13] Mack first moved for a mistrial before trial commenced, when he learned that the State would be introducing photographs relevant to establishing a timeline. His second motion for a mistrial was made during testimony by Detective Brett Wright ("Det. Wright"), with Mack claiming that the State had violated a motion in limine. We examine each incident in turn.

[14] *Photographs.* Immediately prior to the commencement of trial, the State provided Mack with copies of photographs that the State had obtained from M.A.'s mother a few days earlier. The photographs were from April 26, 2014, purportedly representing the last time that M.A.'s mother saw Mack. Mack asked the trial court to exclude the photographs because it was "too late for discovery." (Tr. Vol. II., pg. 20.) The trial court declined to exclude the evidence and denied Mack's motion for a continuance. However, the trial court permitted Mack to conduct a pretrial deposition of M.A.'s mother.

[15]    M.A.'s mother explained that she formerly believed the photographs had been deleted and was under this impression when deposed by Mack. However, she had recently found a camera with a "sim card." *Id.* at 37. At some point, she had told a deputy prosecutor about finding the camera, but she did not immediately produce photographs from the camera memory card. Ultimately, M.A.'s mother had "gone to the CVS on Sunday [before trial]" and printed photographs. *Id.* at 39. When she acknowledged that she had, on the Thursday before trial, tried to produce photographs "at the courthouse" without success, Mack moved for a mistrial. *Id.* at 40. The State argued that Mack was not unduly prejudiced, having known of the possibility the photographs existed because it was mentioned in the probable cause affidavit. Mack responded that there was a "potential *Brady* violation." *Id.* at 46. The trial court denied the motion for a mistrial.

[16]    "To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *Minnick v. State*, 698 N.E.2d 745, 755 (Ind. 1998) (citing *Brady v. Maryland*, 373 U.S. 87 (1963)). *Brady* deals with suppression of material evidence favorable to the defense. Mack does not make a claim that material evidence favorable to him was suppressed. Rather, he claims that the State was obligated to produce the photographs to him "about a week or more prior to trial, at which time, the Defense could have reviewed the images and determined if they needed a continuance due to the newly acquired evidence" and he asserts that he was

required to "alter [his] trial strategy on the day of trial." Appellant's Brief at 27. At bottom, Mack voiced a discovery complaint. The better practice would have been for the State to supplement its discovery responses immediately upon learning that photographic images would be available. But Mack does not explain how a continuance would have benefited him. He conducted an in-court, pretrial deposition of M.A.'s mother, and this revealed no grounds upon which to exclude the photographs. Mack was not placed in grave peril by the delay in disclosure to merit a mistrial.

[17] *Motion in Limine*. Prior to the State's elicitation of testimony from Det. Wright, Mack's counsel stated that he wished to make an oral motion in limine. Defense counsel advised the court that he believed Det. Wright would offer testimony about his three attempts to contact Mack for an interview. On the first two occasions, Mack spoke with Det. Wright and stated that he was busy with work and travel plans. At the third attempted contact, defense counsel answered the call and told Det. Wright "[Mack]'s not going to talk to you." (Tr. Vol. II, pg. 127.) The deputy prosecutor agreed with defense counsel that there should be no reference to Mack obtaining legal representation or to a refusal to talk. She described her intent to elicit questions to establish: Det. Wright called Mack (without telling him the reason for the call), Mack responded that he was very busy and "on the road," on a third call, Det. Wright left a voicemail, and, ultimately, he was not able to make contact. The trial court granted the oral motion in limine "as to the third one." *Id.* at 129.

[18]     Subsequently, Det. Wright testified that he spoke with Mack on two occasions but Mack "had a busy work schedule" and it "wasn't convenient at that time" to conduct an interview. *Id.* at 160. Det. Wright further testified that he told Mack "give me a call" when his schedule became less hectic. *Id.* Then the following exchange took place:

> State: Did he reach out to you with some availability?
>
> Det. Wright: He didn't.
>
> State: Ultimately were you able to sit down and speak with the defendant?
>
> Defense: Objection.

*Id.* at 161. During the ensuing bench conference, Mack argued that the State had deployed an evidentiary harpoon by making reference to a third contact, and he requested a mistrial. An "evidentiary harpoon" occurs when a prosecutor places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jurors against a defendant. *Evans v. State*, 643 N.E.2d 877, 879 (Ind. 1994). To prevail, the defendant must show both that the prosecutor acted deliberately and that the evidence was inadmissible. *Id.* The trial court concluded that the State had not deployed an evidentiary harpoon and denied the motion for a mistrial. We agree with the trial court. The State did not propound questions to elicit testimony either that Mack had an attorney

take Det. Wright's call or that Mack refused to speak. The record shows neither a violation of the motion in limine or an evidentiary harpoon.

[19] Alternatively, Mack argues that the prosecutor committed a *Doyle* violation. *See Doyle v. Ohio*, 426 U.S. 610 (1976). "In *Doyle*, the Court held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who's been arrested and Mirandized to impeach the defendant." *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002). *Doyle* rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. *Teague v. State*, 891 N.E.2d 1121, 1124 (Ind. Ct. App. 2008) (citing *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986)). Here, however, *Doyle* has no application. Mack was not under arrest and had not received *Miranda*[3] warnings when Det. Wright attempted to contact him. And Mack did not testify and offer an explanation subject to impeachment. *Doyle* provides Mack with no grounds for a mistrial.

# Conclusion

[20] Sufficient evidence supports Mack's convictions. He did not demonstrate an abuse of discretion by the trial court in replaying victim testimony. He did not demonstrate his entitlement to a mistrial.

---

[3] 384 U.S. 436 (1966).

Affirmed.

Riley, J., and Pyle, J., concur.